HARTFORD NATIONAL BANK & TRUST COMPANY, Trustee, and Philips Laboratories, Inc.,

v.

E. F. DREW & CO., Inc., Appellant.

No. 11774.

United States Court of Appeals Third Circuit.

Argued April 10, 1956.

Decided Oct. 10, 1956.

Rehearing Denied Nov. 15, 1956.

Harry C. Bierman, New York City, for appellant.

Arthur G. Connolly, Wilmington, Del. (Thomas Cooch, Thomas S. Lodge, Connolly, Cooch & Bove, Wilmington, Del., on the brief), for appellees.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

BIGGS, Chief Judge.

The plaintiff, Hartford National Bank and Trust Company (Hartford), holds United States Patent No. 2,441,091 as trustee for N. V. Philips' Gloeilampenfabrieken, et al. The plaintiff, Philips Laboratories, Inc. (Philips), is the exclusive licensee of Hartford with the right to sue infringers. The plaintiffs allege that claims 12 and 24[1] have been infringed by the defenadnt E. F. Drew & Co., Inc. (Drew). The original application was filed in the Netherlands by Drs. Jacob van der Vliet and Willem Stevens on January 28, 1943 and the date of invention for the purpose of priority therefore is limited to that day. The court below held the claims in issue valid and infringed. D.C.D.Del.1955, 133 F. Supp. 648.

The patent discloses a method of preparing synthetically 7-dehydrocholesterol, provitamin $D_3$, which when irradiated by ultra violet light is converted to vitamin $D_3$. The irradiation process is not covered by the disclosures of the patent and is not in issue. The patent teaches that one can synthetize a sterol derivative such as cholesterol ester by reacting it with a halogenating agent, for exam-

1. The claims are as follows. We set out claim 21 also since it is incorporated by reference in claim 24.

"12. A process for the preparation of 7-dehydrocholesterol, which comprises treating cholesterol ester with a halogen compound capable of replacing hydrogen which is linked to a carbon atom adjacent a carbon-to-carbon double bond whereby a 7-halogenocholesterol ester is produced, subjecting the latter to the action of a dehydrohalogenating agent, whereby the elements of the corresponding hydrohalogenic acid are split off and a double bond is introduced in lieu thereof, and converting the resultant 7-dehydrosterol ester into the 7-dehydrosterol by heating the same with a saponifying agent.

"21. In a process of the character described, the steps of subjecting a member of the group consisting of $\Delta^{5,6}$-unsaturated sterols and their esters to the action of a halogen compound capable of replacing hydrogen which is linked to a carbon-to-carbon double bond whereby 7-halogenosterols and 7-halogenosterolesters are formed, and subjecting these 7-halogenosterols and 7-halogenosterolesters to the action of a dehydrohalogenating agent whereby the elements of the corresponding hydrohalogenic acid are split off and a double bond is introduced in lieu thereof.

"24. A process according to claim 21, wherein the halogenating agent is N-bromosuccinimide."

ple, with a bromine compound such as N-bromosuccinimide. This causes a corresponding halogen atom to be substituted for the hydrogen atom at the 7-position, at carbon atom 7 of the cholesterol molecule. The next or second step, as taught by the patent specification, consists of subjecting the resulting 7-halogenocholesterol to the action of some dehydrohalogenating chemical. The dehydrohalogenation removes the halogen atom from the 7-position and the hydrogen atom from the 8-position and introduces a double bond at the 7-8 position of the cholesterol molecule. The element of novelty or invention lies in the second step. The double bond changes the therapeutically inert material into provitamin $D_3$ which thereafter can be converted to the therapeutically active valuable material, vitamin $D_3$, by simple ultra violet irradiation.

We have said that the element of novelty or invention lies in the second step, the creation of the double bond at the 7-8 position by dehydrohalogenation. The former art proves the novelty rather than disproves it. A brief history demonstrates this. Vitamin $D_3$ is the antirachitic found in cod liver oil and deemed to be essential for the creation of strong bones and teeth. Prior to 1935 one method of creating vitamin $D_3$ consisted of cooking mussels, abstracting the meat therefrom by a fat solvent, saponifying the fat and purifying the remainder by crystalization thereby creating some 7-dehydrocholesterol. This was the so-called "mussel" method.

Another method employed was that of Windaus which used raw material cholesterol esterfied by benzoic or acetic acid dissolved in an organic solvent and oxidized by chromic acid. A keto group was thus introduced in the 7-position. The keto ester was reacted with hydrogen to form an hydroxyl. The hydroxyl group was esterfied and the ester group along with the hydrogen atom was then removed to form a double bond between positions 7 and 8. The compound was then saponified to restore the hydroxyl group. At least six chemical steps were necessary to accomplish the result desired. What van der Vliet and Stevens brought to the art by the disclosures of the patent in suit was a novel and comparatively inexpensive method of creating 7-dehydrocholesterol in quantity by the formation of the double bond as indicated.

Drew attacked the patent vigorously, asserting it discloses nothing of novelty over the prior art, relying principally in the court below on publications by both Wohl[2] and Ziegler.[3] The Wohl article discloses that N-bromoacetamide, and similar substances, will react with unsaturated compounds to place a bromine atom at the carbon atom adjacent to the double bond. But Wohl did not work with cholesterol molecules or, if he did, his publication did not disclose it. Wohl certainly did not disclose the novel step, which van der Vliet and Stevens assert constitutes their invention, whereby the 7-halogenocholesterol was dehydrohalogenated to create 7-dehydrocholesterol. Wohl possesses little significance save as a starting point for Ziegler; indeed, on the appeal, Drew does not argue that the Wohl article affords anticipation of the disclosures of the patent in suit.

The Ziegler article was before the Patent Examiner during the prosecution of the application for the patent in suit. The patent issued despite this publication. This greatly detracts from the weight to be given to it but viewing the article here, as it were *de novo*, we are of the opinion that it cannot fairly be said to afford anticipation of van der Vliet's and Stevens' disclosure. Ziegler and his co-workers had Wohl's statements before them. Ziegler did deal with cholesterol groups. He does refer to compounds created by reacting such groups.

**2.** Defendant's Exhibit 3. A. Wohl. "Bromination of Unsaturated Compounds with N-Bromoacetamid, A Contribution to the Theory of the Course of Chemical Processes." September 19, 1919.

**3.** Defendant's Exhibit 5. K. Ziegler and others. "The Halogenation of Unsaturated Substances in Allyl Position." This article was published in 1942.

with acetabromamid and N-Bromosuccinimide for bromination of unsaturated compounds in the allyl[4] position. The Ziegler article is voluminous. The article in the original German contains 38 pages and the English translation has 32. Drew's expert conceded on cross-examination, and the court below found, 133 F.Supp. at page 651, that the only portion thereof, relevant to the controversy at bar, consisted of a single paragraph as follows: " 'With the utmost ease—in a few minutes—the esters of the cyclic olefin alcohol cholesterol can be brominated with bromsuccinimid. What is involved, as in all cases heretofore described, is a smooth substitution, since quantitatively succinimid is reformed. Naturally we have further pursued obvious consequences. On this subject we shall later report in a separate work.' "

It is true that one could ultimately arrive at 7-dehydrocholesterol or 7-bromocholesterol if one brominated esters of cyclic olefin alcohol cholesterol with bromosuccinimide. Such replacement brominations would constitute necessary first steps. But the paragraph quoted states nothing about the type of compound which would be created by Ziegler's bromination reaction. Ziegler makes no reference to 7-dehydrocholesterol, 7-bromocholesterol, cholesterol benzoate, 7-bromocholesterol benzoate, or to any esters of 7-dehydrocholesterol or of 7-bromocholesterol. Indeed, the paragraph makes no reference to dehydrohalogenation, the essential second step of the patent disclosures.[5] Ziegler may have had this step in mind when he stated that he has further pursued "obvious consequences" and would report later as to them in a "separate" work. The phrase

"obvious consequences" is vague. Perhaps Ziegler in some later work could have disclosed the substance of the novelty of the patent in suit but we agree with the court below that he did not do so. We cannot deem the Ziegler publication to constitute prior art invalidating the patent in suit or the claims sub judice.

By the enactment of the Patent Act of 1952 the presumption of validity of a patent has been made statutory. 66 Stat. 812, 35 U.S.C. § 282. Section 282 provides, "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it." Drew has not met the burden imposed by the statute. The effect of this statutory pronouncement was discussed by this court in R. M. Palmer Company v. Luden's Inc., 3 Cir., 1956, 236 F.2d 496. The flash of genius test has been mitigated.

In conclusion on this phase of the case we draw attention to the facts in the record showing the very substantial commercial success of the process disclosed by the patent. Commercial success to the degree demonstrated here supplies some assurance of the novelty. As was well said by the court below, quoting from the opinion in Metals Disintegrating Co. v. Reynolds Metals Co., D.C.D.Del.1955, 130 F.Supp. 227, 236, "Quick commercial success of a new process 'looms (large) in the evaluation of the inventive thing.' " 133 F.Supp. at pages 652–653.

As to the question of infringement we need state only that this issue was fully and correctly covered in the findings and conclusions of the court below. There is no question but that Drew has infringed the claims in issue.

The judgment of the court below will be affirmed.

4. The monovalent radical.

5. Drew lays emphasis on an earlier paragraph of Ziegler headed "Further Conversions of the Higher Allyl Bromides." This paragraph suggests the dehydro-bromination process but no mention is made therein of dehydrobromination of bromocholesterol. In our view this does not constitute anticipation.